**THIRD DIVIDEND/DARDANOS ASSOCIATES, A California limited partnership; Richard B. Oliver; Douglas Watson, Partners other than the tax matters partner, Petitioners–Appellees,**

v.

**COMMISSIONER INTERNAL REVENUE SERVICE, Respondent–Appellant.**

No. 94–70866.

Tax Ct. No. 3930–93.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1996.

Decided July 9, 1996.

Curtis W. Berner, Buell & Berner, San Francisco, California, for petitioners–appellees.

Gary R. Allen, Loretta C. Argrett, David E. Carmack, John A. Dudeck, Jr., and Edward T. Perelmuter, United States Department of Justice, Washington, D.C., for respondent–appellant.

Before: HUG, Chief Judge, and D.W. NELSON and FERNANDEZ, Circuit Judges.

D.W. NELSON, Circuit Judge:

The Commissioner appeals the tax court's order dismissing for lack of jurisdiction a petition filed by indirect partners Richard Oliver and Douglas Watson ("petitioners") challenging adjustments to the partnership return of Third Dividend/Dardanos Associates ("Third Dividend"), a California limited partnership. The Commissioner asserts that the tax court erred in concluding that the petitioners' partnership items converted to nonpartnership items when Dividend Development Corporation (DDC), a "pass thru partner" under 26 U.S.C. § 6231(a)(9), filed a petition for bankruptcy. We agree with the

Commissioner and accordingly reverse and remand.

## SUMMARY OF FACTS

On February 20, 1992, DDC filed for bankruptcy. DDC was a general partner holding a fifty-percent share in Third Dividend. On June 12, 1992, the IRS informed DDC that it was no longer a party to tax assessment administrative proceedings because its partnership items had converted to nonpartnership items under § 6231 and the corresponding temporary Treasury regulations. After the IRS informed DDC that it no longer qualified as Third Dividend's Tax Management Partner (TMP), the IRS selected Morgan Pacific Realty Corporation as TMP for the tax year ending December 31, 1987. *Third Dividend v. Commissioner,* 68 T.C.M. (CCH) 496, 497, 1994 WL 454617 (1994)(*"Third Dividend I "*).

On September 23, 1992, the IRS sent a notice of Final Partnership Administrative Adjustment (FPAA) to Third Dividend's TMP for the tax year ending December 31, 1987. *Id.* The total adjustment amount was $4,062,175.

DDC was a pass thru partner in Third Dividend, because it was an "S corporation ... through whom other persons [held] an interest in the partnership with respect to which proceedings" were conducted. § 6231(a)(9). For the 1987 tax year, DDC had two shareholders, Oliver and Watson, each holding a fifty-percent interest. *Third Dividend I,* 68 T.C.M. at 497. By virtue of their ownership of shares in DDC, Oliver and Watson were indirect partners in Third Dividend. § 6231(a)(10)("indirect partner" is "a person holding an interest in a partnership through 1 or more pass-thru partners").

On February 24, 1993, DDC filed a timely petition for readjustment as TMP in its capacity as notice partner. On February 25, 1993, a timely petition for readjustment was filed by Oliver and Watson as notice partners. *Third Dividend I,* 68 T.C.M. at 497.

On April 29, 1993, the Commissioner moved to dismiss Oliver's and Watson's petition, but the Commissioner subsequently notified the court that it was her intention to withdraw this motion and instead to move to dismiss the DDC petition. *Id.* Following argument, the court dismissed both petitions "for lack of jurisdiction on the ground that both petitions [were] invalid." *Third Dividend I,* 68 T.C.M. at 501.

This appeal concerns only Oliver's and Watson's petition. In dismissing this petition, the court reasoned that DDC's bankruptcy (1) cut the link of notice between the petitioners and Third Dividend and thus (2) converted to nonpartnership items the partnership items of both the debtor DDC and the non-debtor petitioners.

## THE NOTICE LINK THEORY

■ The *Third Dividend I* court's dismissal of Oliver's and Watson's petition rests on a novel interpretation of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). The court concludes that DDC's bankruptcy filing cut the link of notice between the indirect partners and the partnership. *Third Dividend I,* 68 T.C.M. at 500 (1994). Because "the indirect partners no longer have access to information .... [i]t therefore follows that the Court has no jurisdiction." *Id.*

The court's notice theory is flawed. Notice cannot define the nexus, because the court has jurisdiction over petitions filed by a five-percent group, for which there is no requirement of notice. *See* 26 U.S.C. §§ 6223(b)(2)(IRS must issue notice to five-percent group *if* the five-percent group requests notice), 6226(b)(1); Temp. Reg. § 301.6223(b)–1T(e).

The petitioners' attempt to show that notice is not required has no merit. The petitioners contend that the "Commissioner assumes her conclusion" in quoting the TEFRA statutes and that the Commissioner is "less than candid" about her actual reporting procedures. That the Commissioner quotes the language of statutes and the IRS Manual neither assumes the conclusion nor shows a lack of candor-in so doing the Commissioner properly provides the statutory requirements and the Commissioner's own procedures conforming to them.

## INDIRECT PARTNERS' INTEREST IN THE PROCEEDING'S OUTCOME

■ The tax court also rejected the Commissioner's argument that Watson and Oliver, as five-percent partners, had filed a valid petition. The tax court reasoned that "because their partnership items converted to nonpartnership items at the same time as DDC's partnership items converted (February 20, 1992, the date of DDC's bankruptcy filing), they had no interest in the outcome of the proceeding." 68 T.C.M. at 500. In reaching this conclusion, *Third Dividend I* at points appears to imply that the nexus might be broader than notice. The petitioners, the court implies, as indirect partners are for all practical purposes identical with DDC and as a result their tax liability is to be determined through bankruptcy proceedings. *Id.*

This interpretation works only if one assumes that prior Ninth Circuit case law on this issue is irrelevant. *See id.* According to *American Principals Leasing Corp. v. United States,* 904 F.2d 477 (9th Cir.1990), the scope of the term "debtor" in bankruptcy statutes extends only to the debtor and does not include individuals who themselves have not filed for bankruptcy. We explained in *American Principals* that we read bankruptcy statutes and their legislative history strictly when they refer to the "tax liability of the debtor"—because the language specifies the debtor, the bankruptcy court has no authority to determine the liability of non-debtor partners. *American Principals,* 904 F.2d at 481. Thus, if a partnership declares bankruptcy, the bankruptcy court lacks jurisdiction over the non-debtor partners.

TEFRA provides further grounds for holding that non-debtor partners remain parties in a tax assessment proceeding. While TEFRA elevates the assessment of partnership items to the entity level, the partners whose tax liabilities are "affected by the outcome of a partnership proceeding continue to be the real parties in interest in any partnership audit or litigation proceeding." *Chef's Choice Produce, Ltd. v. Commissioner,* 95 T.C. 388, 396, 1990 WL 143256 (1990). The main concern of the unified post-TEFRA tax assessment proceeding is to aggregate the partners for a uniform assessment of tax

liability, not to transform the partnership itself into the main interested party. *See id.* As the tax court concluded in *1983 Western Reserve Oil & Gas Co., Ltd. v. Commissioner,* 95 T.C. 51, 57, 1990 WL 96346 (1990), *aff'd,* 995 F.2d 235 (9th Cir.1993)(table),

> [t]o argue that the partnership proceeding requires the Tax Court to make determinations with respect to the items of income, gain, loss, or credit of the partnership, rather than the individual partners, and that a partnership proceeding involving a bankrupt partner thus "concerns" the partnership, not the partner, is to exalt form over substance.

The TEFRA statutes governing partnership items also apply when the debtor is a pass thru S corporation. 26 U.S.C. § 6244. As with partners, a shareholder's income tax liability gives him a clear interest in the partnership proceeding. The fact that an S corporation is a separate legal entity, is directly liable for tax on built-in gains and excess net passive income, and has to file a tax return does not negate the interests and responsibilities created by the shareholder's tax liability. *See Bufferd v. Commissioner,* 506 U.S. 523, 530–33, 113 S.Ct. 927, 931–33, 122 L.Ed.2d 306 (1993)(while an S corporation has to pay certain taxes and to file a return, the individual shareholder's return-not the corporation's-triggers the statute of limitations for assessing tax liability) (rejecting Ninth Circuit's reasoning in *Kelley v. Commissioner,* 877 F.2d 756 (1989)); *Giovanini v. United States,* 9 F.3d 783, 792 (9th Cir.1993) (pass-through nature of S corporation taxation requires application of 26 U.S.C. § 47(a) exceptions to shareholders); *Dionne v. Commissioner,* 65 T.C.M. (CCH) 2182, 1993 WL 87719 (1993) (shareholder's tax liability gives him an interest in partnership of which S corporation partner is a pass-through entity; status of partnership items of the S corporation is determined by status of the shareholder) (quoting § 6231(a)(2)(B)).

## CONCLUSION

For the above reasons, we hold that the tax court has jurisdiction over Oliver's and

Watson's petition.  REVERSED and RE-MANDED.